UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL J. NDUATI and CATHERINE NGANGA,<br><br>Plaintiffs,<br><br>v.<br><br>WALLACE G. NDUATI, PAULINE MWANGI and PINNACLE HOME HEALTHCARE SERVICES, INC.,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*  Civil Action No. 21-cv-40059-ADB<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

## MEMORANDUM AND ORDER ON MOTION FOR DEFAULT JUDGMENT

BURROUGHS, D.J.

This is an action brought by Samuel J. Nduati and Catherine Nganga, also known as Catherine Mwangi, see [ECF No. 32-2 at 14], (collectively, "Plaintiffs") to recover from Wallace G. Nduati, Pauline Mwangi, and Pinnacle Healthcare Services, Inc. (collectively, "Defendants") for alleged breach of contract, breach of fiduciary duty, and violations of Mass. Gen. Laws ch. 93A §§ 9, 11 and 940 C.M.R. § 3.16(3), (4).  [ECF No. 20 ("Am. Compl.") at 1].  Presently before the Court is Plaintiffs' motion for a default judgment following Defendants' failure to appear or otherwise defend this action.  [ECF No. 32].  For the following reasons, the motion is GRANTED in part and DENIED in part.

## I.    PROCEDURAL BACKGROUND

On June 7, 2021, Plaintiffs filed their initial complaint against all Defendants, [ECF No. 2], at which point the case was assigned to Judge Hillman, [ECF No. 3].  Pinnacle Home Healthcare Services, Inc. ("Pinnacle") was served on June 16, 2021, and Wallace Nduati and

Pauline Mwangi were served on June 17, 2021.  [ECF Nos. 5, 6].  Defendants' responses to the complaint were due, respectively, on July 7 and July 8, 2021, but no response was filed. Following Defendants' failure to respond, Plaintiffs moved for default judgment on October 12, 2021, [ECF No. 8], which Judge Hillman construed as a motion for entry of default and granted, [ECF Nos. 9, 10].  Plaintiffs then re-filed a motion for default judgment in accordance with Judge Hillman's standing order on motions for default judgement.  [ECF No. 12].  Judge Hillman heard oral argument on the motion on January 3, 2022 and took the motion under advisement.  [ECF No. 14].  Before the court ruled on the motion, however, Plaintiffs moved to file an amended complaint, which Judge Hillman allowed.  See [ECF Nos. 18, 19].

Plaintiffs filed their Amended Complaint on April 1, 2022, [ECF No. 20], which caused Judge Hillman to deny as moot Plaintiffs' prior motion for default judgment, [ECF No. 21]. Plaintiffs served the Amended Complaint on Defendants, [ECF Nos. 22, 23, and 24], Defendants again failed to respond, and Plaintiffs requested notice of default, [ECF No. 25].  Soon after Plaintiffs requested notice of default, the case was reassigned to this Court, and the Clerk of the Court entered a notice of default as to all Defendants.  [ECF Nos. 26, 27].  Plaintiffs then filed the pending motion for default judgment on July 18, 2022.  [ECF No. 32].

## II.    FACTUAL BACKGROUND

In January 2015, Plaintiffs entered into an oral agreement with Defendants Wallace Nduati and Pauline Mwangi "to establish Pinnacle as a home care provider agency."  [Am. Compl. ¶ 10].  Pursuant to the initial oral agreement, Plaintiffs agreed to provide cash investments in Pinnacle in exchange for each receiving a twenty-five percent interest in the business.  [Id. ¶ 11].  The terms of the business arrangement among the parties included an understanding that all four individuals would share equally in the profits and that Defendants

would handle the business' day-to-day operations.  [Id. ¶ 12].  In accordance with this

agreement, Plaintiffs and Defendants invested $65,000 and $110,000, respectively.  [Id. ¶ 13].

At an unspecified date, but "[s]hortly after Pinnacle became operational," Defendants notified

Plaintiffs that the "business was having financial difficulties and could not make any

distributions of profits," but offered no explanation as to why the business was struggling.  [Id. ¶

14].  Despite the alleged financial struggles, Defendants continued to receive weekly salaries

from Pinnacle.  [Id.].  Plaintiffs claim that they were not able to access Pinnacle's bank accounts

because at some point between 2015 and 2018 Defendants "changed" the accounts such that

Plaintiffs were denied access.  [Id. ¶ 15].

  a.    The Snap Agreement

Around October 27, 2016, when Plaintiffs were still part-owners of Pinnacle, Defendants

entered into an agreement (the "Snap Agreement") with Snap Advances LLC ("Snap") without

Plaintiffs' knowledge or consent.  [Am. Compl. ¶ 19; ECF No. 32-2 at 1–10].  Pursuant to the

Snap Agreement, Snap agreed to extend a loan to Pinnacle in return for Pinnacle's future profits.

[Id. ¶ 19].  Specifically, Pinnacle agreed to pay Snap 5.98 percent of its income through daily

payments.  [Id. ¶ 21].  The Snap Agreement was seemingly signed by both Defendants and

Plaintiff Catherine Nganga ("Nganga"), however, Nganga maintains that she did not sign her

name and did not authorize Defendants to sign on her behalf.  [Id. ¶¶ 19–20].  Plaintiff Samuel

Nduati further avers that he had no knowledge that Defendants had entered into the Snap

Agreement and was unaware of Pinnacle's attendant obligations.  [Id.].

Notwithstanding the terms of the Snap Agreement, Pinnacle failed to make the daily

payments required by the agreement and accrued a $25,450 debt to Snap.  [Am. Compl. ¶ 22].

To recover the unpaid sum, Snap filed suit against Pinnacle and its guarantors, Defendants and

3

Nganga, on March 30, 2018 in Utah state court.  [Id. ¶ 23].  After Nganga was served, she contacted Defendants to ask about the lawsuit but Defendant's informed her that they "would take care of it and that she had nothing to worry about."  [Id. ¶ 24].  Defendants, however, did not answer the complaint and a default judgment in the amount of $25,835.36 was entered against all named defendants, including Nganga.  [Id. ¶¶ 25–26; ECF No. 20-1 at 27–29].

        **b.**    **The Complete Business Agreement**

On October 3, 2017, approximately a year after Defendants signed the Snap Agreement, Defendants entered into a second agreement (the "Complete Business Agreement") with Complete Business Solutions Group Inc. ("Complete Business") in which Complete Business extended a loan to Pinnacle in exchange for a portion of Pinnacle's "future receivables[.]"  [Am. Compl. ¶¶ 27–28].  Plaintiffs remained part-owners of Pinnacle at the time the Complete Business Agreement was signed, yet Defendants never informed them of its existence.  [Id. ¶ 28].  Plaintiffs further maintain that any of their signatures that appear on the agreement are forged and unauthorized.  [Id.].  As with the Snap Agreement, Defendants again failed to make payments to Complete Business as required by the agreement's terms, prompting Complete Business to file suit in Philadelphia County Court of Common Pleas.  [Id. ¶ 29].  After Samuel Nduati and Nganga were served, they contacted Defendants regarding the amount owed to Complete Business, but Defendants again assured them "that they would take care of things." [Id. ¶ 30].  Despite these assurances, Defendants did not file an answer on behalf of Pinnacle, Samuel Nduati, or Nganga, and the court eventually entered a default judgment against the named defendants for $187,820.79.  [Id. ¶¶ 31–33].

c.      **Dissolution of the Business Relationship**

Around 2018, Plaintiffs agreed to end their business relationship with Pinnacle and, to effectuate the termination, signed a Mutual Release Agreement and Termination Agreement and Release (the "Release Agreement").  [Am. Compl. ¶ 16].  In return for Plaintiffs signing the Release Agreement and transferring their Pinnacle stock to Defendants, Plaintiffs were supposed to "receive back their initial investment of $65,000 and an additional $90,000 in 18 equal monthly payments commencing on the 31st day of January 2020."  [Id. ¶ 17].  Thereafter Plaintiffs were reimbursed for their initial investment, but never received any portion of the additional $90,000 that they were promised.  [Id. ¶ 18].

## III.    LEGAL STANDARD

"Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for entry of a default judgment."  Control Point Assocs., Inc. v. Santosuosso, No. 21-cv-11699, 2022 WL 1175008, at *2 (D. Mass. Apr. 20, 2022).  First, the clerk may enter default under Rule 55(a) "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, the clerk may enter a default judgment if the plaintiff's claim is for a sum certain, or otherwise by the court, on an application for a default judgment.  Fed. R. Civ. P. 55(b).

On a motion for default judgment, the Court considers "all well-pleaded factual allegations as true, to determine whether [the complaint] alleges a cause of action."  Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002); see also Franco v. Selective Ins., 184 F.3d 4, 9 n.3 (1st Cir. 1999) ("A Party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to

5

which damages will be calculated." (citation omitted)).  Where the complaint contains facts sufficient to state a claim upon which relief can be granted, the defendant's liability is established at the time of default.  See Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 41 (1st Cir. 2012); Brockton Sav. Bank v. Peat, Markwick, Mitchell & Co., 771 F.2d 5, 13 (1st Cir. 1985).  In contrast, courts do not presume the truth of factual allegations related to the amount of damages.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).  "The court must ensure that the damages awarded are reasonable and demonstrated by the evidence." Santosuosso, 2022 WL 1175008, at *2 (citing Fed. R. Civ. P. 55(b)(2)(C)).

"[A] default does not expose a defendant to impositions not properly identified before the entry of default."  Hooper-Haas, 690 F.3d at 40.  Therefore, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

## IV.  DISCUSSION

Plaintiffs' Amended Complaint brought claims for breach of contract (Count I), breach of fiduciary duty (Count II), deceit (Count III), and violation of Mass. Gen. Laws Chapter 93A (Count IV).  [Am. Compl. ¶¶ 34–57].

### a.  Breach of Contract

Plaintiffs' breach of contract claims seeks to recover for Defendants alleged breach of the Release Agreement, which provided, in part, that Pinnacle would pay Plaintiffs $90,000 in 18 equal monthly payments beginning in January 2020 in exchange for Plaintiffs transferring their stock in Pinnacle to Defendants.  [ECF No. 20-1 at 16].  Plaintiffs further allege, and Defendants are taken to have conceded, that Defendants have not made any payments to satisfy this obligation and have therefore breached the terms of the Release Agreement.

To prevail in a breach of contract claim, a plaintiff must "show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013).   Having considered the Release Agreement and the allegations set forth in the Amended Complaint, the Court concludes that the first two elements are satisfied as the parties entered into a valid, written contract and Plaintiffs were not only ready and willing to perform under the terms of the agreement but did so by transferring their stock in Pinnacle to Defendants.  The Court further finds that the third and fourth elements have been met because Plaintiffs have not received any portion of the $90,000 owed to them under the Release Agreement.  Plaintiffs have therefore set forth allegations in their Amended Complaint sufficient to state a claim for breach of contract.

**b.      Breach of Fiduciary Duty**

Plaintiffs further seek to recover for breach of fiduciary duty for the losses incurred as a result of Defendants forging their signatures on the Snap Agreement and Complete Business Agreement and changing the permissions of Pinnacle's bank accounts such that Plaintiffs could not access the accounts.  To make out a claim for breach of fiduciary duty under Massachusetts law, "a plaintiff must establish '(1) the existence of a duty of a fiduciary nature, based upon the relationship of the parties, (2) breach of that duty, and (3) a causal relationship between that breach and some resulting harm to the plaintiff.'"  Xiao Wei Yang Catering Linkage in Inner Mongolia Co. Ltd v. Inner Mongolia Xiao Wei Yang USA, Inc., 340 F. Supp. 3d 70, 82 (D. Mass. 2018) (quoting Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co., 53 F. Supp. 3d 279 (D. Mass 2014)).

The Court first considers whether the Defendants owed a fiduciary duty to Plaintiffs at the time of the alleged breach, *i.e.*, when they forged Plaintiffs' signatures and removed Plaintiffs' ability to access Pinnacle's bank accounts.  With respect to the forged signatures, as alleged in the Amended Complaint, Defendants forged each of Plaintiffs' signatures on contracts in 2016 and 2017, when Plaintiffs and Defendants were still shareholders and officers of Pinnacle.  As directors and officers of Pinnacle, Defendants owed Pinnacle and its shareholders "a fiduciary duty of loyalty and fair dealing."  In re Cumberland Farms, Inc., 284 F.3d 216, 227 (1st Cir. 2002).  "Corporate directors must 'act with absolute fidelity [to the corporation] and must place their duties to the corporation above every other financial or business obligation[,]'" id. (quoting Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 677 N.E.2d 159, 179–80 (Mass. 1997) (alteration in original)), and that fiduciary duty is "especially exacting where the corporation is closely held."  Cooke v. Lynn Sand & Stone Co., 640 N.E.2d 786, 791 (Mass. App. Ct. 1994) (citing Donahue v. Rodd Electrotype Co., 328 N.E.2d 505, 512–16 (Mass. 1975)).  With a close corporation, like Pinnacle, "the relationship among the stockholders must be one of trust, confidence and absolute loyalty . . . ."  Donahue, 328 N.E.2d at 512.  With this framework, the Court easily concludes that Defendants, as directors of Pinnacle, owed Plaintiffs, as Pinnacle's shareholders, a fiduciary duty.  The Court further finds that the remaining two factors are also satisfied.  Forging each of Plaintiffs' signatures to enter into contracts, absent Plaintiffs' knowledge or consent, is an obvious breach of the fiduciary duty as it is not only deceitful but also a criminal act.  See Mass. Gen. Laws ch. 267, § 1.  Further, absent the forgery, Plaintiffs would not be liable for the default judgments entered against them by the Utah and Pennsylvania state courts.  The Court therefore finds that Plaintiffs have set forth allegations that

support their claim for breach of fiduciary duty relating to the forging of their names on the Snap Agreement and Complete Business Agreement.

The Court further notes that it need not reach the issue of whether Defendants also stated a claim for breach of fiduciary duty with respect to preventing Plaintiffs from accessing Pinnacle's bank accounts as Plaintiffs did not identify any additional damages associated with that alleged act. Additionally, the Court need not reach the issue of whether Plaintiffs have sufficiently supported their claim for deceit because that claim seeks to recover the same damages as those covered by the breach of fiduciary duty.

### a.    Chapter 93A Damages

Plaintiffs request that the Court treble the damages pursuant to Mass. Gen. Laws ch. 93A, arguing that Defendants engaged in unfair and deceptive acts by: (1) changing Pinnacle's bank account without informing Plaintiffs; (2) failing to ensure that Pinnacle maintained its other contractual agreements; (3) forging Plaintiffs' signatures without authorization on contracts with Snap and Complete Business; and (4) failing to honor agreements that Defendants entered into with Plaintiffs. [Am. Compl. ¶¶ 49–50]. Chapter 93A provides that recovery "shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation . . . ." Mass. Gen. Laws ch. 93A, § 11.

To allege a violation of Chapter 93A, a plaintiff must show that the defendant engaged in trade or business and committed an unfair or deceptive practice, causing economic injury to the plaintiff. Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir. 2009). Although Massachusetts lacks a precise test for determining whether conduct crosses the line to become unfair or deceptive for purposes, "courts have laid out a number of helpful

guideposts for determining when conduct is deceptive or unfair." Hanrahran v. Specialized Loan Servicing, LLC, 54 F. Supp. 3d 149, 154 (D. Mass. 2014).  For example, "to determine whether conduct is 'unfair' for purposes of Chapter 93A, courts consider several factors: (1) whether the practice is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers (or competitors or other businessmen)."  Id. (citing Mass. Eye & Ear Infirmary, 552 F.3d at 69).  With that context, the Court easily concludes that Defendants engaged in conduct that violates Chapter 93A.  The Court need not look beyond Defendants' forgery of Plaintiffs' signatures absent their consent to reach this conclusion.  The conduct, as previously discussed, is not only illegal pursuant to Massachusetts law, but also inherently unethical, unscrupulous and the cause of significant injury to Plaintiffs in the form of the unsatisfied default judgments entered against them.  The Court further finds that the forged signatures were done knowingly.  The Court therefore awards Plaintiffs treble damages amounting to $910,968.45.

      **b.**    **Interest**

Plaintiffs request that the Court also award interest pursuant to Mass. Gen. Laws ch. 231 § 6C.  The statutory rate of interest under this provision is 12 percent per annum, which the Court will use because there is no rate of interest in the Release Agreement.  See generally [ECF No. 20-1 at 16–25].  Pursuant to Section 6C, interest is calculated either from the breach of the contract or the demand, or if either is unclear, from the commencement of the action.  Mass. Gen. Laws ch. 231 § 6C.  While the date of breach is uncertain, the Amended Complaint alleges that Plaintiffs sent a demand pursuant to Mass. Gen. Laws ch. 93A to Defendants on February 8,

2021, and the Court will use that date as the start date to calculate interest.  Interest thus increases the amount of damages by $20,815.01 to a total sum of $931,783.46.

### c.    Attorneys' Fees & Costs

Finally, Plaintiffs request that the Court award costs and attorneys' fees incurred in this action.  The Court acknowledges that Plaintiffs may be entitled to reasonable costs and attorneys' fees, but Plaintiffs have not submitted any documents reflecting the amount of costs and fees incurred.  Accordingly, Plaintiffs' request for costs and attorneys' fees is denied without prejudice.  Plaintiffs may refile a motion for costs and attorneys' fees provided that it is supplemented with a breakdown of the attorneys' fees sought, including the hourly rate charged by each attorney who performed the work, the number of hours of work, and the work performed.

## V.    CONCLUSION

For the above reasons, Plaintiffs' motion for default judgment against Defendants is GRANTED in part and DENIED in part.  The Court will enter judgment against Defendants in an amount of $931,783.46, which consists of:

(1) $90,000 as owed by the Release Agreement;
(2) $213,656.15 from two separate default judgments;
(3) $607,312.30 in addition as treble damages; and
(4) $20,815.01 in interest.

Plaintiffs are further granted leave to file a renewed motion requesting costs and attorneys' fees if they so choose.

**SO ORDERED.**

January 4, 2023

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE